In the Matter of Cle-Ware Industries, Inc., et al., Debtor.

CLE–WARE INDUSTRIES, INC., et al., Appellants,

v.

Howard SOKOLSKY et al., Appellees.

No. 73–1063.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1973.

Decided Feb. 26, 1974.

Mark S. Lieberman, Chicago, Ill., for appellants; Jack B. Schmetterer, Gottlieb & Schwartz, Chicago, Ill., on brief.

Ned L. Mann and Cheryl S. Karner, Cleveland, Ohio, for appellees; Nadler, Sokolsky & Bahas, Benesch, Friedlander, Mendelson & Coplan, Cleveland, Ohio, on brief for Sokolsky, Friedlander and Phillips; Frank Whalen, Wells, Marks & Whalen, Cleveland, Ohio, on brief for Frank Whalen; Robert H. Jackson, Kohrman & Jackson, Cleveland, Ohio, on brief for Kohrman & Jackson.

Before PHILLIPS, Chief Judge, CECIL, Senior Circuit Judge, and ALLEN, District Judge.*

PHILLIPS, Chief Judge.

This is an appeal of an order of the District Court which affirmed an allowance of attorneys' fees entered by a Bankruptcy Judge in a Chapter XI proceeding under the Bankruptcy Act. Jurisdiction is based on 11 U.S.C. § 47.

Few issues in bankruptcy administration are litigated so frequently as the question of attorneys' fees.[1] Yet few areas of bankruptcy law are as clouded by uncertainty about the meaning of statutes, rules and judicial opinions as the area of attorneys' fees. There is, however, agreement that the allowance of fees to an attorney depends largely upon the facts of each individual case.[2] The facts in the present case are set out at length because of the large number of bankruptcy law issues which they raise.

## I. THE FACTS

This proceeding was commenced on February 18, 1971, by the filing of a petition for an arrangement under Chapter XI of the Bankruptcy Act by Cle-Ware Industries, Inc. (Cle-Ware). Approximately one week later similar petitions were filed by nine subsidiary corporations of Cle-Ware. All of the corpora-

* Honorable Charles M. Allen, Judge, United States District Court for the Western District of Kentucky, sitting by designation.

1. See 3A Collier on Bankruptcy ¶ 62.12, at 1497–1505 (14th ed. 1971) for a list and discussion of controverted cases.

2. See 3A Collier on Bankruptcy ¶ 62.12, at 1489 (14th ed. 1971).

tions were encountering financial difficulties and sought court-assisted rehabilitation. For purposes of more efficient administration, the cases of the ten corporations were consolidated by the Bankruptcy Court on March 3, 1971.

The debtor corporations were involved in the nationwide distribution and warehousing of automotive parts and accessories and hardware and plumbing parts and supplies. Corporate facilities were operated in Cleveland, New York, Atlanta, California and Puerto Rico, while the Cle-Ware Rayco, Inc. subsidiary maintained 159 retail outlets throughout the entire United States, in addition to a Rhode Island manufacturing plant. The total enterprise employed hundreds of people in various parts of the country and produced an annual sales volume of about $44 million.

At the time of the arrangement, unsecured creditor claims totaled over $15 million and secured creditor claims aggregated over $4 million. The plan of arrangement provided that secured creditors would be paid off completely and general creditors would receive five cents on the dollar with a stock option or the possibility of fifteen to twenty cents on the dollar for those who elected to take deferred payments. The Cle-Ware enterprise was revived by the plan of arrangement and is in full operation today.

When the arrangement proceedings began, the Bankruptcy Judge authorized the debtor-in-possession to continue to operate the corporate business. Attorneys Howard L. Sokolsky and Jerome Friedlander were appointed by the Bankruptcy Judge as counsel for the debtor-in-possession under a general retainer pursuant to General Order 44 of the General Orders in Bankruptcy.[3] These appointments were made even though the debtor already had retained other counsel, namely Frank C. Whalen and the law firm of Kohrman and Jackson, who never applied to the Bankruptcy Judge for appointment pursuant to General Order 44. The debtor-in-possession and the debtor were one and the same parties, to wit, Cle-Ware and its nine subsidiaries.

The Bankruptcy Judge attempted "to establish rigid boundaries in which the debtor-in-possession was to operate the Cle-Ware empire." Believing that creditors had little faith in the debtor's abili-

---

3. General Order 44 in Bankruptcy reads as follows:

"APPOINTMENT OF ATTORNEYS

No attorney for a receiver, trustee or debtor in possession shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver, trustee or debtor in possession, stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other party in interest, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, the trustee, or the estate in the matters upon which he is to be engaged, and that his employment would be to the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee or debtor in possession shall have represented any interest adverse to the receiver, trustee, creditors or stockholders in any matter upon which he is employed for such receiver, trustee, or debtor in possession, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney.

Nothing herein contained shall prevent the judge, in proceedings under section 77 of the Act, from authorizing the employment of attorneys who are attorneys of the corporation, or associated with its legal department, in connection with the operation of the business of the corporation by a trustee or trustees under subsection (c) of section 77, when such employment is found by the judge to be in the public interest in relation to such operation and is not adverse to the interests of the trustee or trustees of the creditors of the corporation."

ty to operate the corporate business successfully, the Bankruptcy Judge required counsel for the debtor-in-possession to devote their legal skills "to overseeing the entire management of the business in order to protect the assets and prevent losses." To attain this result, the Bankruptcy Judge required that all Cle-Ware expenditures "be made only upon application and order of the Court." Over an eight month period from February 1971 to October 1971, there were 2,487 of these applications submitted to and approved by the Bankruptcy Court.

After a plan of arrangement for all debtors was confirmed by the Bankruptcy Judge on October 13, 1971, the applications for attorneys' fees, which are the subject of this appeal, were filed. Sokolsky and Friedlander, counsel appointed by the court to represent the debtor-in-possession filed a joint application seeking $200,000 compensation. Whalen and the firm of Kohrman and Jackson at the same time filed an application for $180,000 in compensation as attorneys for the debtor.

The attorneys for the debtor also represented Gerald Levine, who owned 165,992 shares of the 394,000 outstanding shares of Cle-Ware stock. They represented Levine in his personal stock negotiations with various parties, including several persons known collectively as the 1300 Group, to whom Levine sold his Cle-Ware stock by an agreement also concluded on October 13, 1971.

The debtor companies, through their new management, filed written objections to the application submitted by the four sets of attorneys, raising serious factual questions about the claims. As to the attorneys for the debtor, it was charged, among other things, that (1) certain of their services were duplicated by the services rendered by attorneys for the debtor-in-possession or should have been rendered by the latter attorneys; and (2) extensive services were rendered on behalf of their personal client, Gerald Levine, the principal stockholder of Cle-Ware, which were not compensable in the bankruptcy proceedings. As to the attorneys for the debtor-or-in-possession, it was objected that they had failed to document their services with detailed time records. As to all attorneys, it was charged that they claimed compensation for extensive ministerial and administrative services that were not properly compensable as "professional services," and that counsel had, duplicated much work of the administrative personnel of the debtor-in-possession and of each other. Without conducting any evidentiary hearing as to these issues of fact, the Bankruptcy Judge allowed a fee of $162,500 to the attorneys for the debtor and $197,500 to the attorneys for the debtor-in-possession.

The following schema outlines the requests and allowances for the respective attorneys:

| Client | Attorneys | Court Approved | Requested Compensation | Allowance |
|---|---|---|---|---|
| Debtor | Whalen and the firm of Kohrman and Jackson | No | $180,000 | $162,500 |
| Debtor-in-Possession | Sokolsky and Friedlander | Yes | $200,000 | $197,500 |
| | | Total Allowance | | $360,000 |

The appellant debtor companies then petitioned the District Court to review the Bankruptcy Judge's order and to suspend execution thereof, citing as errors the objections to the fee applications that had been overruled by the Bankruptcy Judge and the Bankruptcy Judge's failure to hold an evidentiary hearing. The District Court on November 20, 1972, affirmed the Bankruptcy Judge's Allowance of Fees and Second Order of Distribution in a five line order. From that order, this appeal has been perfected.

## II. Principles Governing Bankruptcy Fee Allowances

In determining whether the fees awarded counsel were excessive, we are guided by the economic spirit of frugality that underlies the Bankruptcy

Act. In In re Mt. Forest Fur Farms of America, Inc., 157 F.2d 640, 644 (1946), this court, speaking through Judge Martin, said:

". . . the policy of the Bankruptcy Act, manifest in all its provisions regarding expenses and fees, is to reduce to a minimum the cost of administering estates, . . . . the courts are bound to give the statute such construction and application as will fulfill the intention of Congress. In re King, D.C.W.D.Tenn., 11 F. Supp. 351, 357. Among other authorities, reference was made to the opinion of Mr. Justice Cardozo in Realty Associates Corporation v. O'Connor, 295 U.S. 295, 299, 55 S.Ct. 663, 79 L. Ed. 1446, where he declared for the unanimous court that extravagant costs of administration in winding up estates in bankruptcy have been denounced as crying evils; that, in response to those complaints, Congress had attempted to fix the limit for expenses growing out of the services of referees and receivers; and that a court should not forget that Congress meant to hit the evil of extravagance, wherefore the meaning of the words of the Bankruptcy Act if doubtful, must be adapted to its aims." [4]

More recently, Bankruptcy Judge Asa S. Herzog has written as follows:

"There is . . . one overriding principle which governs bankruptcy fees and overshadows all other canons. This is the economy principle, often referred to as the 'Economic Spirit of the Act' . . .

\* \* \* \* \* \*

"Economy in administration is now axiomatic, and . . . it is sufficient to note that the Supreme Court has denounced extravagant costs of administration as a 'crying evil' and has warned against 'vicarious generosity.'

"The importance of the economy principle is that it modifies the business standards which ordinarily are the measure of fees. *Bluntly, fees in bankruptcy cases must be considerably lower than the compensation of those engaged in private practice.*" Herzog, "Fees and Allowances in Bankruptcy", 36 Conn.B.J. 374, 376–377 (1962). (Emphasis added and footnotes omitted.)

3A Collier on Bankruptcy ¶ 62.12, at 1491–93, (14th ed. 1971) analyzes the elements which, in addition to the economy principle, should be used to determine the reasonable value of services rendered by counsel:

"In determining the reasonable value of services rendered by an attorney the following elements are to be considered: *'The time spent, the intricacy of the problems involved, the size of the estate, the opposition met, the results achieved,—all subject to the economical spirit of the Bankruptcy Act.'* In view of the primary purpose of bankruptcy liquidation it is not surprising to find that, aside from the principle of economy, the *results achieved* constitute the factor of greatest determinative weight.

\* \* \* \* \* \*

This implies that (1) great success and benefit to the estate commands a liberal compensation, and (2) all effort and labor may go virtually without reward where no benefit accrued to the estate. *Benefit to the estate* as a yardstick for measuring the value of attorneys' services has been recognized by the Supreme Court in Randolph v. Scruggs, [190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903)]. But even where the estate undoubtedly benefitted, for instance where the total amount of claims was reduced thanks to counsel's efforts, there may be at least two reasons for reducing his compensation as

---

4. For other statements of this court demonstrating our long-standing adherence to "the economical spirit of the Bankruptcy Act," see, e. g., Butzel v. Webster Apartments

Co., 112 F.2d 362, 367 (6 Cir., 1940), and Page v. Rogers, 149 F. 194, 195 (6 Cir. 1906), rev'd on other grounds, 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332 (1909).

earned by the benefit conferred. One is the estate's financial inability to carry the burden of an adequate remuneration. The other, again an offshoot of the everpresent economy doctrine, may be the fact that counsel for trustee or receiver in performing certain services, for instance contesting claims against the estate, acted not only on behalf of the estate, but also on behalf of creditors, individual or groups." (footnotes omitted)

The United States District Court for the Northern District of Ohio has codified the factors to be considered in determining counsel's compensation in its Bankruptcy Rule 12(c), which provides as follows:

"Among the factors to be taken into consideration in determining the compensation to be allowed to attorneys entitled thereto by law are the following:

(1) The amount of work done.

(2) The difficulties or intricacies of the problem presented.

(3) The skill required and experience of counsel in similar cases.

(4) The results accomplished.

(5) The amount involved in connection with the services rendered.

(6) The size of the estate.

(7) The length of time consumed.

(8) Contingency or certainty of compensation." [5]

■ Finally, we state the standard of review which we apply in considering orders of the Bankruptcy Court which have been confirmed subsequently by the District Court. This court has held consistently that the findings of fact by a Bankruptcy Judge will not be reversed unless they are clearly erroneous. In re Nelson & Sons, Inc., 426 F.2d 235 (6th Cir. 1970); Rule 52(a), Fed.R.Civ.P.

In *In re Nelson*, the District Judge filed an extensive opinion and order in which he detailed his reasons for confirming the findings of the referee, and we cited approvingly Cunningham v. Elco Distributors, 189 F.2d 87 (6th Cir. 1951), wherein we said:

"No principle has been more firmly established in this circuit than that concurrent findings of the referee in bankruptcy and the district judge are not to be set aside, except upon clear demonstration of mistake." 189 F.2d at 88–89.

In the present case, the District Judge incorporated the opinion of the Bankruptcy Judge and confirmed the Bankruptcy Judge's allowance of fees.

### III. Fundamental Error of Bankruptcy Court

The basic mistake of the Bankruptcy Court involves an issue of law and procedure. The fundamental error of the Bankruptcy Judge grew out of his mistaken conception that, even though the same party is both debtor and debtor-in-possession, separate counsel must be appointed to represent the debtor-in-possession in all cases.

The Bankruptcy Judge expresses this concept in his opinion as follows:

"Since, in the opinion of this Court, there is always a possibility, however remote, of conflict of interest between the separate entities of debtor and debtor-in-possession, this Court has always appointed, upon proper application, separate counsel from that of the debtor. The possibility of conflict is thereby removed to the satisfaction and peace of mind of both entities, the creditors, the public and the Court. The economical spirit of the Bankruptcy Act is also preserved because when one attorney wears two hats by

---

5. Subsequent to the Bankruptcy Judge's fee allowance in this case, the local Bankruptcy Rules of the Northern District of Ohio were reformulated, and the factors to be considered in determining counsel's compensation were set forth in new Rule 8. This new rule, which went into effect on January 15, 1973, added two additional factors: 1) the expeditious performance of legal services, and 2) the professional quality of the services rendered.

serving two masters, in addition to the possibility of conflict, his fees are based upon the performance of two separate functions."

Appellants assert that the practice of appointing and compensating separate attorneys for the debtor-in-possession and also compensating the privately-retained attorneys for the debtor is unique to the Northern District of Ohio. This court is aware of the distinction between the duties of counsel for the debtor and counsel for a debtor-in-possession, as discussed more fully below, but we disagree with the practice in the Northern District of Ohio. Bankruptcy Judges in other Circuits and Districts also reject this practice.

For example, Bankruptcy Judge Asa S. Herzog of the Southern District of New York finds "absolutely nothing" to support the practice employed in the Northern District of Ohio, saying:

"A debtor is defined as a person who could become a bankrupt under § 4 of the Act and who files a petition for an arrangement. Where there is no receiver or trustee, the debtor 'shall' continue in possession of his property and 'shall' have the title and exercise the powers of a bankruptcy trustee. Thus, unless there is a receiver or trustee, the debtor automatically becomes a debtor in possession. The debtor and debtor in possession are treated as separate and distinct entities.

\* \* \* \* \* \*

"But the debtor does not cease to exist as such when he files his petition for arrangement and spontaneously becomes a debtor in possession. The two entities exist side by side until the conclusion of the proceeding. The debtor in possession may be authorized to operate the business and manage the property of the debtor (§ 343), and may be authorized to borrow money, etc. and issue certificates of indebtedness therefor (§ 344), or to lease or sell property of the debtor [§ 313(2)]; but it is the debtor who proposes the arrangement (§ 323), is examined at the meeting of creditors [§ 336(3)], and makes the deposit necessary to effect the arrangement [§ 337(2); § 362(2)].

"Thus the attorney retained to file the petition usually acts in two capacities, concurrently representing the debtor in effecting an arrangement and the debtor in possession in the exercise of the powers of a bankruptcy trustee and in all things in connection with the conduct of the business.

*"I do not think it was intended that the debtor be represented by one attorney and that in his capacity as debtor in possession, he must be represented by an entirely different attorney. There is absolutely nothing to support such a view. The fact remains, as I have indicated, that the debtor in possession is not a trustee. He may possess the title and powers of a trustee and his position may be 'for all practical purposes' that of a trustee; he may be a 'court officer analogous' to a trustee; but he is not the independent trustee appointed pursuant to § 44 of the Act. I cannot conceive of the debtor so dimidiated that he requires different counsel each time he changes hats!*

\* \* \* \* \* \*

"As a matter of common practice, the attorney representing the debtor and the debtor in possession files a single application reciting all the professional services rendered by him in both capacities."

Herzog, "Bankruptcy Law—Modern Trends". 37 Ref.J. 110–12 (1963). (Emphasis added and footnotes omitted.)

Bankruptcy Judge William Rudin of the Eastern District of New York, states that "I fix one fee to cover all the services rendered" by the attorney for the debtor and the attorney for the debtor-in-possession. Although there is a statutory distinction between the person designated as attorney for the debtor and the attorney for the debtor-in-pos-

session, Judge Rudin says, "[H]e is, of course, one and the same person . . . ." Rudin, "Allowance in Chapter XI Proceedings," 40 Ref.J. 29, 30 (1966).

■ This court strongly disapproves the practice of appointing separate counsel as attorney for the debtor-in-possession and at the same time compensating another attorney at the expense of the bankrupt estate in his capacity as counsel for the debtor for services rendered after the filing of a petition for a plan of arrangement. Hereafter we will not approve this procedure as a general practice in the Sixth Circuit. Only in exceptional circumstances, which we do not now foresee, will this procedure be allowed by this court. The debtor and the debtor-in-possession is one and the same person, although "wearing two hats." We see no valid reason why, as a general rule, his legal representation in both capacities should not be limited to one attorney or one set of attorneys. In the ordinary situation, as in the instant case, there is no actual or potential conflict of interest requiring or justifying payment for services of separate attorneys.

In the present case, however, we are confronted by a situation where an able and experienced Bankruptcy Judge has followed this practice in accordance with previously established precedent in his District at a time when there was no precedent to the contrary in this Circuit. Two sets of attorneys have devoted considerable time and effort in this Chapter XI proceeding which resulted in the confirmation of a Plan of Arrangement continuing the economic life of Cle-Ware and its subsidiaries. The Bankruptcy Judge avoided the considerable expenses of a receivership, yet kept the debtor corporations functioning as a continuing enterprise.

■ Appellants contend that no fee should be allowed to counsel for the debtor. This appears to be a question of first impression in this Circuit and we apply today's rule only prospectively. We are unwilling to make this rule applicable in the present case because of the obvious inequities that would result.

■ Instead we reverse the decision of the District Court and remand with directions to fix a reasonable fee in this particular case for counsel for the debtor and a reasonable fee for counsel for the debtor-in-possession, the total of which shall not exceed a reasonable fee which would be allowable to one attorney, representing the debtor corporations in their capacities as both debtor and the debtor-in-possession.

On remand, we direct that an evidentiary hearing be conducted on the objections of the debtor corporations, that counsel be required to substantiate their fee requests under the guidelines set forth in this opinion, and that the objecting parties be afforded the right of cross examination of the claimant attorneys.

The procedure to be followed on remand with regard to the respective fees in this particular case is set forth more fully in Sections V and VI of this opinion.

### IV. General Order 44

■ Appellants further contend that no fee can be allowed to the attorneys for the debtor because they were not appointed by the Bankruptcy Court pursuant to General Order 44.[6]

General Order 44 provides that "no attorney for a receiver, trustee or debtor in possession shall be appointed except upon the order of the court." This provision does not on its face cover an attorney for a debtor who is *not* in posses-

6. For a complete text of General Order 44, see n. 3. The litigants stipulate that General Order 44 is applicable to this case although the United States Supreme Court abrogated the General Order effective October 1, 1973, when it implemented its new Rules of Bankruptcy Procedure. A compilation of the new bankruptcy rules relevant to the issues raised in this case is contained in an appendix to this opinion.

sion. 8 Collier on Bankruptcy ¶ 5.34, at 716 (14th ed. 1971) states as follows:

"General Order 44 does not apply to an attorney for a debtor not in possession, or to an attorney for a bankrupt prior to the filing of a Chapter XI petition under § 321 in a pending bankruptcy proceeding."

In support of their contention with respect to General Order 44, appellants rely primarily on In re Hydrocarbon Chemicals Inc., 411 F.2d 203 (3rd Cir. in banc), cert. denied, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969). We find that decision to be factually distinguishable and not controlling in the case at bar.

In *In re Hydrocarbon Chemicals*, the matter was originally a Chapter XI proceeding and subsequently was converted to a Chapter X proceeding. While in Chapter XI, the Bankruptcy Court appointed a receiver who retained two sets of attorneys on order of the court. Thereafter, the fee claimants—attorneys who were retained by the debtor's attorney without court approval—settled claims of creditors and removed the Government's jeopardy tax assessment. A majority of the judges of the Third Circuit determined that such services "were clearly among the duties of the receiver which should have been performed by him and his attorneys." 411 F.2d at 206.

## V. The Fee of Counsel for the Debtor

The Bankruptcy Judge allowed the attorneys for the debtor, Frank C. Whalen and the law firm of Kohrman and Jackson, a compensation award of $162,500. In addition to the grounds referred to above, the appellants object to the fee allowance for these attorneys on the following grounds: 1) Some of the compensated services were performed not for the debtor but for its principal

shareholder, Gerald Levine; 2) These attorneys performed ministerial and administrative services not properly compensable as professional services; 3) These attorneys duplicated services performed by the attorneys for the debtor-in-possession; and 4) The compensation award to these attorneys was clearly excessive.[7]

The legal services alleged to have been performed for the personal benefit of Gerald Levine constitute one of the most troublesome issues raised on this appeal. Gerald Levine was the principal stockholder of Cle-Ware, owning 165,992 out of 394,000 shares issued as of October 13, 1971. On that date he entered into an agreement with several persons known collectively as the 1300 Group whereby Levine sold his stock and transferred his voting rights. The contract provided for the sale of Levine's stock at $10 per share for a total of $1,659,920 and a collateral agreement for the employment of Levine by Cle-Ware under its new management. Repayment of Levine's debt to Cle-Ware of $40,000 was delayed over a five year period. Levine reaped these benefits from the transaction while unsecured creditors with claims exceeding $15 million were paid only five cents on the dollar in cash under the terms of the Plan of Arrangement. So far this record discloses, Levine received all these benefits without assuming personal liability for any attorney's fees.

Appellants assert that these attorneys were compensated for 573⅓ hours spent on the negotiation and sale of Levine's Cle-Ware stock to the 1300 Group. Beginning in April 1971, these attorneys met occasionally with the members of the 1300 Group to negotiate what became the ultimate agreement with the group. Thereafter, there were frequent conferences among these attorneys, members of the group and Levine.

---

7. The appellants also raise the last three objections to the fee allowance to counsel for the debtor-in-possession. The principles stated in this section with respect to these objections are equally applicable in the forthcoming section dealing with the fee of counsel for the debtor-in-possession.

It is undisputed that the debtor corporations were not parties to the Levine-1300 Group agreement and that Levine was represented by the same counsel who here seek compensation as attorneys for the debtor. Further, the record reveals that *all* the time devoted by counsel to fashioning this agreement was included in their application for allowance as attorneys for the debtor.

■ It is clear that attorneys entitled to fees for services in bankruptcy and Chapter XI proceedings will have their fees reduced proportionately where their services were partly performed on behalf of private clients. 3A Collier on Bankruptcy ¶ 62.12, at 1493 (14th ed. 1971) states:

"While an attorney's association with other parties in interest does not necessarily prevent his appointment as counsel for the estate, yet it may cause him to suffer a reduction of his compensation out of the estate on the ground that certain services are considered to have been rendered for the benefit of his private clients rather than for the estate."

Further, Collier adds:

"Where there is such a multiplicity of beneficiaries of one particular service, courts are anxious to see in the estate only a kind of secondary beneficiary of efforts made primarily for, and therefore to be compensated by, the directly interested creditors." (footnote omitted.) *Id.*

■ Similarly, the record in this case indicates that a major portion, if not all, of the disputed 573⅓ hours represents time spent by these attorneys rendering legal services for Levine and not for the debtor. On remand, these disputed items should be reviewed item-by-item before a determination is made as to which, if any, are properly chargeable to the debtor. No compensation should be allowed for any services found to have been rendered to Levine as an individual.

The appellants' second objection to the compensation award to the attorneys for the debtor is that the award represents compensation for ministerial and administrative services not properly compensable as professional services within the meaning of General Order 42. General Order 42 provides as follows: "No allowance of compensation shall be made to any attorney for a receiver, trustee or debtor in possession except for professional services."[8]

The standards of professional services are set forth in 3A Collier on Bankruptcy ¶ 62.12, at 1481–82 (14th ed. 1971):

"The services for which an attorney for a receiver or trustee may claim compensation are scarcely more susceptible of exhaustive definition than are the administrative duties of his client. Only *professional* services, it is true, are entitled to compensation, and General Order 42 is clear enough not to leave any room for a charge for non-professional services, such as services of a commercial or clerical nature, or as accountant, even if this charge be made at a rate which in no wise differs from the rate the officer would have to pay if the services were rendered by a non-lawyer. However, within the scope of the term 'professional services' the conceivable variety of legal services is co-extensive with the activities of the officer himself . . . The allowance of compensation for such services may be said to be governed by one leading test: wherever the officer (trustee or receiver) is by the statute either *directed* or in his sound discretion *permitted* to act, and where the compliance with his duties or the exercise of his privileges require legal advice or as-

---

8. Although General Order 42 was abrogated by the Supreme Court effective October 1, 1973, it is nevertheless applicable to this case, the facts of which transpired in 1971 and in which fees were allowed in 1972. For the text of the relevant Rule of Bankruptcy Procedure which has superseded General Order 42, see the appendix.

sistance, the estate is chargeable with a reasonable allowance of the officer's attorney, if retained by leave of court, in respect of all services reasonably warranted by the circumstances of the case." (footnotes omitted)

Judge Learned Hand observed in In re Eureka Upholstering Co., 48 F.2d 95, 96 (2d Cir. 1931):

"In conclusion, we cannot ignore the curious notion which this application discloses, that an attorney may recover for what are not legal services at all. For example, in the petition at bar are items for arranging for the sale of the assets, hiring truckmen to carry back concealed property to the bankrupt's place of business, safeguarding the property, going along with the truck, checking up what was found, stirring up a criminal prosecution, getting hold of an accountant, collecting accounts due, inquiring of a pledgee of accounts as to any equity, examining the bankrupt's papers, and more of the sort. The implication behind these claims is that the receiver's attorney may recover, as for legal services, for discharging the duties of the receiver himself. This is an error, . . . ."

This objection primarily is applicable to Exhibit B of the application of the attorneys for the debtor-in-possession, *infra*. The appellants assert that the following activities of counsel for the debtor are not compensable as professional services: 1) customer relations and investigation; 2) meetings with employees of subsidiaries; 3) continued representation of the debtor as corporate counsel; 4) furnishing information and documents to the Securities and Exchange Commission; and 5) work with a public relations specialist.

▬▬ We emphasize that counsel for the debtor are not entitled to be compensated for any services outside the scope of the customary duties of counsel for the debtor as detailed at the end of this Section V. When the Bankruptcy Court approved counsel for the debtor-in-possession, those attorneys, and not the attorneys for the debtor, became the only attorneys who could be compensated for rendering legal services for the operation of the bankrupt estate. On the record before us, this court cannot determine on this appeal whether any or all of the five activities enumerated above should be classified as professional services. This issue is to be determined on remand. We observe, however, that all of the five enumerated above, even if classified as professional services, appear to involve services in the administration of the bankrupt estate. As such, they are not compensable to counsel for the debtor.

On remand, the District Court should review each of the items for which these attorneys request compensation to determine whether (1) they constitute professional services, and (2) if so, which counsel should be compensated for such services as falling within the scope of their respective duties. The compensation of attorneys for the debtor should be limited to legal services which it is the duty of the attorneys for the debtor to provide. In no event should compensation be allowed to any attorney for services other than professional services.

The appellants' third objection to the compensation award to the attorneys for the debtor is that the award represents compensation for duplicated services. The appellants contend that the total award was bound to skyrocket once the Bankruptcy Court permitted allowance of compensation to separate sets of attorneys for the debtor and the debtor-in-possession. Appellants cite several cases wherein courts reduced fees where it was found that separate sets of attorneys performing overlapping services burdened the estate. *See, e. g.,* Official Creditors' Committee of Fox Market, Inc. v. Ely, 337 F.2d 461 (9th Cir. 1964); In re Solar Mfg. Corp., 215 F.2d 555 (3rd Cir. 1954).

With respect to the employment of several attorneys which results in duplication of services, 3A Collier on Bank-

ruptcy ¶ 62.12, at 1506 (14th ed. 1971) states:

> "Only *one* reasonable attorney's fee is provided for, irrespective of the number of attorneys employed. There is no such statutory protection against duplication or multiplication of legal services rendered to the trustee or receiver. In this respect, however, the courts have reached results in harmony with the statutory principle. They have not only denounced duplication of services generally, applying as a sanction the denial of compensation, but they decided to allow in much the same way *one* attorney's fee only, wherever several attorneys rendered the estate services that could have been rendered by a single attorney." (footnote omitted)

 Counsel for the debtor and counsel for the debtor-in-possession cannot be compensated for rendering the same service. In the item-by-item review on remand of the applications submitted by both sets of attorneys, fees to debtor's counsel should be limited to those legal services which they provided and which are within the scope of their duties. Similarly, the District Court should allow fees to counsel for the debtor-in-possession for those legal services which they provided and which are within the scope of their duties.

The appellants' final objection to the compensation award to the attorneys for the debtor is that the Bankruptcy Judge abused his discretion in allowing $162,500 in fees since this amount was clearly excessive and inconsistent with the economical spirit of the Bankruptcy Act. In support of this objection, the appellants assert that counsel for the debtor requested compensation at an hourly rate of about $71[9] (2,517 hours for a requested $180,000). Further, these rates are alleged to be substantially higher than the prevailing rate recommended by the local bar association.

Although the Bankruptcy Judge noted the factors to be taken into consideration in determining the reasonableness of a fee stated in local Bankruptcy Rule 12(c) and referred to a relevant disciplinary rule of the local bar association, he apparently accepted the proffered hourly rate without receiving evidence on what it should be. The Bankruptcy Judge attributed "the incomparable skill and expertise of these learned scholars and able practitioners [counsel for the debtor]" as being the primary factor in resuscitating Cle-Ware. The "masterful job" of these attorneys resulted in general creditors receiving five cents on the dollar with a stock option or the possibility of fifteen to twenty cents on the dollar for those who elected to take deferred payments.

 Assuming, without deciding, that this was a "masterful job," the Bankruptcy Judge clearly erred in making the compensation award without "opinion evidence touching the reasonableness of the fee." See In re Barceloux, 74 F.2d 288, 294 (9th Cir. 1935). At the hearing to be conducted on remand, opportunity should be provided the litigants to introduce such opinion evidence.

 Consistent with the above reasoning, we find it difficult to conceive any situation which would justify awarding these attorneys compensation in excess of the hourly rate recommended by the local bar association for such bankruptcy work, however "masterful" the job. Attorneys who take bankruptcy work do so with advance knowledge that they cannot expect the highest of fees, especially in cases such as this, where the general creditors are paid only five cents on the dollar in cash and face the prospect of receiving no more than twenty cents on the dollar.

We reemphasize that the attorneys for the debtor can be compensated only for those services normally performed by an attorney serving in that capacity.

---

9. Counsel for the debtor-in-possession requested compensation at an hourly rate of $50, *infra*.

These include the following: the preparation and filing of the schedules and statement of affairs, the petition for arrangement and all other applications and orders which were required except those relating to the operation of the business; appearances on behalf of the debtor in court proceedings; attendance at meetings of creditors to consider the proposed arrangement; preparation of the application and order for confirmation and attendance at hearings thereon; offering of the required proof of the "feasibility" of the arrangement and that it was in the best interests of creditors; and representation of the debtor in other hearings involving the adoption of the arrangement.[10]

Accordingly, we reverse the order of the District Court affirming the compensation award to counsel for the debtor, Whalen and the firm of Kohrman and Jackson, and remand for a hearing on the objections raised by the appellants and for determination of a reasonable fee consistent with the principles herein stated.

### VI. Fee of Counsel for the Debtor-in-Possession

The court appointed attorneys for the debtor-in-possession, Sokolsky and Friedlander, were granted a compensation award of $197,500 by the Bankruptcy Judge.

The attorneys for the debtor-in-possession based their fee application on two exhibits. Exhibit A set forth a chronology of work performed showing the time in most cases attributed to each task. Compensation was calculated at the rate of $50 per hour, and the fees claimed by counsel based on Exhibit A services aggregated $102,669. Exhibit B detailed a listing of 8,842 entries contained in 2,487 applications presented to the Bankruptcy Court for approval and authorization of checks to be issued by the debtor-in-possession.[11] The expenditure applications granted by the Bankruptcy Court during this period totaled $10,762,176.40. The fee claimed by these attorneys based on the services represented by Exhibit B aggregated $97,301.

The appellants raised numerous objections to the fee application of these counsel and requested that an evidentiary hearing be held on these objections. The Bankruptcy Court rejected the objections and failed to grant an evidentiary hearing prior to allowing these attorneys a fee of $197,500.[12]

The appellants allege that the Bankruptcy Judge erred for the following reasons: 1) The attorneys for the debtor-in-possession failed to document their fee application with time records for a major portion of their services, 2) The attorneys for the debtor-in-possession performed ministerial and administrative services not properly compensable as professional services, 3) The attorneys for the debtor-in-possession duplicated services already performed by the attorneys for the debtor, and 4) The compensation award to the attorneys for the debtor-in-possession was clearly excessive.

With respect to the first assignment of error, the record indicates that these attorneys failed to document with time records over one-quarter of their claims represented by Exhibit A and all of their claims represented by Exhibit B. Section 62(d) of the Bankruptcy Act, in relevant part, requires:

"A receiver or trustee or the attorney for any of them, or any other attorney, seeking compensation for services rendered by him in a proceeding

---

10. For further discussion of the customary duties of counsel for the debtor, see Rudin, "Allowances in Chapter XI Proceedings," 40 Ref.J. 29 (1966) and 8 Collier on Bankruptcy ¶ 6.25, at 945–48, (14th ed. 1971).

11. This was the procedure which implemented the Bankruptcy Court's request that every expenditure of the bankrupt could be made only upon application to and order of the Bankruptcy Court.

12. This award represented $102,699 for services represented in Exhibit A and $94,801 for services represented in Exhibit B.

under this title or in connection with such proceeding, shall file with the court his petition setting forth the value and extent of the services rendered, the amount requested, and what allowances, if any, have theretofore been made to him." 11 U.S.C. § 102(d).

This statutory provision was implemented by Rule 12(a) of the Bankruptcy Rules of the District Court which, in pertinent part, provides:

"A detailed statement shall be attached to each application for attorney fees, *showing the items of service rendered, with the charge and date for each item,* unless in any given case the court finds that such itemization is not practicable and directs that it may be dispensed with . . ." (emphasis supplied)

The Bankruptcy Court never found that the keeping of time records was not practicable and never excused the keeping of such records, nor did the Bankruptcy Judge say why he considered the records not kept by counsel more "unreasonable and extraordinarily costly" than the time records they did keep.

The importance of the statutory requirement and the local rule are underlined by 3A Collier on Bankruptcy ¶ 62.38, at 1641–42 (14th ed. 1971) wherein counsel is advised to consider the following admonition:

"Appointees of the court, whether receiver, trustee, or attorney, must expect their claims to be closely scrutinized by the debtor, the creditors, and by the court, and they should be meticulous in keeping accurate accounts of the various items and elements which go to making up their claim. It will not do to state in a general way services performed, and then ask a bulk allowance." In re National Accessories, Inc., 13 F.Supp. 278, 281 (D.C.Neb.1936).

Many decisions recognize that the keeping of accurate time records by attorneys in bankruptcy proceedings is indispensable. For example, *see,* In re Roustabout Company, 386 F.2d 354 (9th Cir. 1967); Miller v. Robinson, 378 F.2d 2, 3 (3rd Cir. 1967); In re General Economics Corporation, 360 F.2d 762, 765 (2d Cir. 1966); In re Hudson & Manhattan Railroad Co., 339 F.2d 114, 115 (2d Cir. 1964).

Chief Judge Lumbard said in *Hudson & Manhattan Railroad:*

"We wish to emphasize that any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent. Lawyers are well aware that, especially where services of the nature here involved are spread over a period of time and ultimate payment is virtually assured, they are valued principally on the basis of the time required. There is no excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported by daily records or for it to expect a court to do so." 339 F.2d at 115.

■ Without the time records to document all the services represented by Exhibit A and with no inkling of an idea of how much time counsel spent on legal services represented by Exhibit B, we find it impossible to determine if the compensation award to the attorneys for the debtor-in-possession was reasonable. Absent this evidence, the Bankruptcy Judge clearly erred in rendering a compensation award of $197,500.

At the evidentiary hearing on remand the Bankruptcy Court should require counsel for the debtor-in-possession to establish the amount of time actually spent by them on the items listed in Exhibit A for which there are no time records and the role of counsel in preparing and submitting the Exhibit B applications to the court for approval of expenditures by the bankrupt.

The appellants' second assignment of error with respect to the compensation award to the attorneys for the debtor-in-possession is that the award represents compensation for ministerial and administrative services not properly

compensable as professional services within the meaning of General Order 42, *supra.*

The Bankruptcy Judge found that the services for which these attorneys were compensated were in strict conformity with the standards of General Order 42. The Bankruptcy Judge emphasized that it was he who had placed the onerous burden on these counsel of devoting "their legal talents and consummate skills to overseeing the entire management of the business in order to protect the assets and prevent losses."

In response, the appellants contend that none of the services attributable to Exhibit B, except the initial fashioning of the procedure to request a court order for each expenditure, are professional services. The litigants dispute who actually prepared and submitted these requests for court orders approving expenditures. The appellants contend that it was the managerial personnel of the debtor-in-possession who prepared and submitted the requests. This is not clear from the record before us and must be determined on remand. We re-emphasize that the attorneys can be compensated only for professional services and obviously they cannot be paid for documents which could have been prepared by Cle-Ware clerical personnel.

■■■■ Absent some determination of the role actually played by counsel in getting each Cle-Ware expenditure approved, we think it impossible to set a fee for the type of services represented in Exhibit B. At the same time, it must be acknowledged that the Bankruptcy Judge, who did not appoint a receiver in this case, placed a heavier than usual burden on counsel in requiring counsel to oversee the entire management of the bankrupt. However, we find nothing in the Bankruptcy Act that permits attorneys to be compensated for services ordinarily performed by receivers even if it is alleged to have saved the bankrupt estate some money. Counsel for the debtor-in-possession are experienced bankruptcy attorneys and must be charged with full knowledge of the strict requirement of General Order 42 that attorneys be compensated only for professional services. Neither the Bankruptcy Court nor this court can abrogate General Order 42.

■■■■ On remand, in determining a reasonable fee to be allowed these attorneys, each Exhibit A item should be reviewed to determine whether it constituted professional services under General Order 42. Counsel for the debtor-in-possession should be compensated only for those activities which were professional *legal* services.

The appellants' third assignment of error with respect to the compensation award to the attorneys for the debtor-in-possession is that the award represents compensation for duplicated services. In the previous Section V of this opinion, we have determined that two sets of attorneys should not be compensated for overlapping services and that the test which should be employed on remand in determining which set was entitled to compensation for a particular service is as follows: Within the scope of which particular set of attorneys' duties should the service have been rendered?

The appellants' final assignment of error with respect to the compensation award to the attorneys for the debtor-in-possession is that the Bankruptcy Judge abused his discretion in allowing $197,500 in fees. In support of this contention, the appellants assert that the hourly rate of $50 applied to Exhibit A claims was higher than the prevailing rate recommended by the local bar association.

For the reasons hereinbefore stated, on remand the litigants should be permitted to introduce "opinion evidence touching the reasonableness of the fee" prior to the allowance of any fee to these attorneys.

■■■■ Compensation of the attorneys for the debtor-in-possession should be allowed only for legal services customarily performed by attorneys serving in that capacity. These are limited to legal

services to the debtor-in-possession in connection with the operation of the business.[13] Once the petition for a plan of arrangement had been filed, the property was in the custody of the debtor-in-possession. The attorneys for the debtor-in-possession are entitled to be compensated only for those legal services performed by them in connection with the operation of the business.

Accordingly, we reverse the order of the District Court affirming the compensation award to counsel for the debtor-in-possession, and remand for a hearing on the objections raised by the appellants and for determination of a reasonable fee consistent with the principles herein stated.

### VII. Conclusion

In Gochenour v. Cleveland Terminals Bldg. Co., 142 F.2d 991, 995 (6th Cir. 1944), this court emphasized that compensation is allowable only with respect to "matters in connection with the reorganization of the debtor and proceedings on behalf of creditors and stockholders. [The Act] comprehends matters directly affecting the plan of reorganization and excludes those indirectly affecting them. . . . It is the duty of the court in administering the bankruptcy law to avoid double expense to the estate. . . ."

In order to avoid the double expense of attorneys' fees for bankrupt estates in this Circuit, we today announce the general rule that hereafter we will not approve the practice of appointing and compensating separate counsel for the debtor-in-possession and at the same time compensating the debtor's privately-retained counsel for legal services rendered after the filing of a petition for a plan of arrangement. We see no valid reason, except in exceptional circumstances which we do not now foresee, why legal representation in both capacities should not be limited to one attorney or one set of attorneys.

Application of this new rule to the attorneys in this case obviously would be unjust. Therefore, the rule will be applied only prospectively. A determination must be made of the fees which should be allowed to the attorneys in the present case. In Sections V and VI of this opinion, we have set forth guidelines which in summary indicate that these particular attorneys are to be reasonably compensated for the unduplicated, professional legal services which they rendered for their respective corporate clients within the scope of their respective customary duties.

It is reemphasized that the combined fees to be allowed to the attorneys for the debtor and the attorneys for the debtor-in-possession in no event shall exceed the amount of a reasonable fee which would be allowable to one attorney representing Cle-Ware and its subsidiaries in both capacities.

The fee allowed to the respective attorneys will be supported by findings of fact after an evidentiary hearing as hereinabove provided.

Reversed and remanded.

### APPENDIX

The Supreme Court of the United States in an order dated April 24, 1973, prescribed Rules of Bankruptcy Procedure pursuant to 28 U.S.C. § 2075.

The Bankruptcy Rules took effect on October 1, 1973, and were made applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which event the former procedure applies. The Bankruptcy Court and District Court proceedings in the present case were completed in 1972 and, hence, the former procedure governs disposition of this case.

The new Bankruptcy Rules abrogated most of the General Orders in Bankrupt-

---

13. For further discussion of the customary duties of counsel for the debtor-in-possession, see Rudin, "Allowances in Chapter XI

Proceedings," 40 Ref.J. 29, 30 (1966) and 8 Collier on Bankruptcy ¶ 6.32, at 960–983 (14th ed. 1971).

cy, including General Orders 42 and 44 which are especially applicable in the present case.

Bankruptcy Rule 215, which superseded General Order 44, is as follows:

## Rule 215.

## EMPLOYMENT OF ATTORNEYS AND ACCOUNTANTS

*(a) Conditions of Employment of Attorneys and Accountants.* No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant's knowledge all of the attorney's or accountant's connections with the bankrupt, the creditors, or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.

*(b) Employment of Attorney or Accountant with Adverse Interest.* If without disclosure any attorney or accountant employed by the trustee or receiver shall represent or hold, or shall have represented or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both, and may also deny any allowance to the trustee or receiver if it shall appear that he failed to make diligent inquiry into the connections of such attorney or accountant.

*(c) Employment by a General Creditor.* An attorney or accountant shall not be disqualified to act as attorney or accountant for the trustee or the receiver merely because of his employment by a general creditor in the case.

*(d) Employment of Attorney or Accountant on Salary.* A trustee or receiver authorized to operate the business and manage the property of the bankrupt may, without specific authorization under subdivision (a) of this rule, continue or engage any attorney or accountant as a salaried employee if such employment is necessary in the operation of the business and management of the property of the bankrupt.

*(e) Employment of Trustee or Receiver as Attorney or Accountant.* The court may authorize the trustee or receiver to act as an attorney or accountant for the estate if such authorization is in the best interest of the estate.

*(f) Services Rendered by Member or Associate of Firm of Attorneys or Accountants.* If, under this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed on behalf of a professional partnership or corporation, any member or regular associate of the firm may act for the attorney or accountant so employed, without further order of the court, and his services may be compensated as services of the attorney or accountant in accordance with Rule 219.

Bankruptcy Rule 219 was derived from portions of the Bankruptcy Act and several General Orders, including General Order 42. Bankruptcy Rule 219, in relevant part, is as follows:

Rule 219.

## COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED IN A BANKRUPTCY CASE

*(a) Application for Compensation or Reimbursement.* A person seeking compensation for services, or reimbursement of necessary expenses, from estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.

\* \* \* \* \* \*

*(c) Factors in Allowing Compensation.*

\* \* \* \* \* \*

*(3) Attorney or Accountant.* Compensation may be allowed an attorney or an accountant only for professional services.