892 F.2d 1043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nancy K. LARSON, Plaintiff-Appellee,
v.
James B. BOROFF, Defendant-Appellant.
 Nos. 89-1176, 89-1216.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1990.
 
 BEFORE MILBURN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 James B. Boroff appeals from a decision of the district court upholding the decision of the bankruptcy court that his liability for a debt of $8,000, based on a "hold harmless" clause in his judgment of divorce from Nancy Larson, is not dischargeable in bankruptcy. Nancy Larson cross appeals the district court's decision that Boroff can discharge his obligation to reimburse her for $7,045.37 in attorney fees she spent defending a foreclosure action.
 
 
 2
 James Boroff and Nancy Larson were married from May 1976 to November 1979. No children were born to the marriage, but Larson entered the marriage with two sons from a previous marriage. At that time, Boroff and Larson discussed Boroff's adopting the sons and Larson waived support for the boys from her first husband. Boroff never adopted the sons. Both sons have now attained the age of majority. Boroff owned the marital residence at the time of the marriage and it remained in his name throughout the marriage. Larson invested some ten thousand dollars of her own money into the home.
 
 
 3
 After the marriage and with monetary support from Larson, Boroff started a business under the name of Village Auto Wash. On August 3, 1978, Village obtained a Small Business Administration loan from Empire National Bank in the amount of $120,000. Boroff signed a "Guaranty" on August 3, promising to repay the loan amount. Larson did not sign this Guaranty. The Guaranty was secured by real estate owned by Village Auto Wash and by a second mortgage on the marital residence. The second mortgage was executed in a "Real Estate Mortgage Security Guaranty," signed on August 3, 1978 by both Larson and Boroff. On August 17, 1978, both Boroff and Larson signed another "Guaranty," promising to repay Empire National Bank for any loans made to Village Auto Wash. The Guaranty specified that the liability of the signatories to the bank was not to exceed $120,000. The parties dispute whether the August 17 Guaranty applied to the $120,000 loan of August 3 or to a subsequent loan to Village Auto Wash.
 
 
 4
 On November 8, 1979, Larson and Boroff obtained a "Judgment of Divorce." Under the title "Alimony," the judgment provided that neither party would owe the other alimony. Boroff agreed, however, to hold Larson harmless on the debt from the SBA loan. Under the title "Property Settlement," the judgment states:
 
 
 5
 IT IS FURTHER ORDERED that the Defendant, JAMES B. BOROFF, shall hold the Plaintiff harmless on any and all responsibility of the parties to the Empire National Bank and/or the United States of America for a certain SBA Loan and Mortgage covering the above described property [the marital home]....
 
 The judgment continues:
 
 6
 IT IS FURTHER ORDERED that the business known as the Village Auto Wash, Inc. and the property upon which it is located ... shall be and is awarded to the Defendant, JAMES B. BOROFF, free from any claim of the Plaintiff and the Defendant shall assume all liabilities thereon including the SBA Loan ... above described and shall hold Plaintiff harmless therein.
 
 
 7
 Boroff also agreed in the judgment of divorce to use his "best efforts" to obtain release of the marital home from its status as security for the loan to Village Auto Wash. Pursuant to the judgment of divorce, Boroff quit-claimed the home to Larson and Larson quit-claimed all her interest in Village Auto Wash to Boroff.
 
 
 8
 After the divorce, Village Auto Wash began experiencing financial difficulties and defaulted on the August 3 loan. Empire National Bank began judicial foreclosure and collection proceedings on February 7, 1981 against both Boroff and Larson. Empire foreclosed on the Village Auto Wash real estate and sold the property, leaving a deficiency of $76,385.32. Empire also commenced proceedings in state court against Larson to foreclose on the marital home.
 
 
 9
 Boroff filed a voluntary Chapter 7 petition in bankruptcy on March 28, 1984. The bankruptcy petition listed as creditors Empire National Bank on a business loan and Larson on the hold-harmless agreement contained in the divorce judgment. Larson filed an adversary proceeding to argue that Boroff's agreement to hold her harmless on the debt owed to Empire should not be dischargeable in bankruptcy.
 
 
 10
 In June 1985, Larson negotiated a settlement in the foreclosure action on the home, whereby Empire National Bank agreed to reduce the debt from $76,385.32 to $8,000 by having Larson execute a promissory note in the latter amount, still secured by the mortgage on the home.
 
 
 11
 At the bankruptcy trial held on June 12, 1987, Bankruptcy Judge Laurence E. Howard ruled that the obligation to hold Larson harmless from the debt to Empire was non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(5) because Boroff's assumption of the debt was in the nature of alimony and/or support. Judge Howard also ruled that the liability of Boroff for the payment of Larson's attorney fees incurred in defending against Empire National Bank in state court was dischargeable. Boroff appealed the decision on the debt to the district court. Larson cross-appealed the decision on attorney fees.
 
 
 12
 On appeal of the bankruptcy decision, the district court found that the bankruptcy court's determination that Boroff's assumption of the debt was intended as support for Larson was not clearly erroneous. The court cited the test in In re Calhoun, 715 F.2d 1103 (6th Cir.1983) for determining whether assumption of a debt in a divorce settlement is "actually in the nature of alimony, maintenance, or support." On Larson's cross-appeal on the matter of attorney fees, the district court found that Judge Howard's ruling that the attorney fees were dischargeable was not clearly erroneous.
 
 
 13
 * The standard of review for determinations of fact by the bankruptcy court is the "clearly erroneous" standard. Cle-Ware Industries, Inc. v. Sokolsky, 493 F.2d 863 (6th Cir.1974) (considering Bankruptcy Act of 1898).
 
 
 14
 The issue of the dischargeability of the assumption of debt turns on whether Boroff's agreement to hold Larson harmless on the debt was "in the nature of alimony" or in the nature of a property settlement. If the former, then it is not dischargeable in bankruptcy. If the latter, then it is dischargeable. 11 U.S.C. § 523(a)(5) provides:
 
 
 15
 A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.
 
 
 16
 This court established a test for determining whether an assumption of debt was in the nature of alimony in the case of In re Calhoun. First, the court is to determine whether it was the intent of the parties that the assumption of debt would be in the nature of alimony. Second, if it is determined that the parties intended the assumption to be in the nature of alimony, Calhoun requires that the court determine whether the assumption actually had the effect of providing necessary support.
 
 A. Joint obligation
 
 17
 A threshold question is whether the debt upon which Empire National Bank sued was a joint obligation of both Boroff and Larson. The bankruptcy court held that Boroff raised the issue too late for it to be considered because it was not raised in the pleadings. We agree. Nowhere in his answer did Boroff allege that the debt was not a joint obligation. Boroff first raised the issue of the jointness of the obligation in a "trial brief" dated one day before the bankruptcy trial began. At neither of two pre-trial conferences, on October 26, 1984 and August 7, 1985, did he raise the issue. A pre-trial memorandum executed by the court for the purpose of summarizing the positions of the parties made no mention of the issue of joint obligation. We note two facts which indicate that Boroff understood the obligation on the debt to be joint: (1) Boroff's divorce lawyer, Richard Zerafa, stated in a deposition that the parties were jointly liable to the bank on the debt, and (2) Boroff listed both Empire National Bank and Larson as equal creditors for the same $76,385.32 in his bankruptcy petition. In view of these facts, the bankruptcy court did not err in finding that Boroff had failed timely to raise the issue of whether the debt on the loan from Empire National Bank was a joint obligation.
 
 
 18
 Although we need not reach the issue, we note that even if, as Boroff alleges, the August 17 Guaranty (signed by Larson) does not refer to the August 3 loan, but to another loan, it would appear that Larson was obligated to repay the August 3 loan because of the mortgage on the marital home. Although the home was solely in Boroff's name at that time, Larson had invested some $10,000 of her money in the home and she signed the Real Estate Mortgage Guaranty along with Boroff. Thus, Larson stood to lose if the loan was not repaid.
 
 B. Intent of the parties
 
 19
 The test established in In re Calhoun requires the court to determine whether it was the intent of the parties that the assumption of debt was to be in the nature of alimony or support. Footnote seven of that decision lists several factors that may be taken into account. They include:
 
 
 20
 the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; relative earning power of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.
 
 
 21
 715 F.2d at 1108 n. 7.
 
 
 22
 Certain of these factors support appellant's argument that the debt assumption was not in the nature of alimony. The debt assumption did not directly provide Larson with daily necessities (although, as Larson points out, it permitted her to maintain the daily necessity of housing); it was listed under "property settlement," not "alimony," in the Judgment of Divorce; the marriage was of short duration, typically not indicating large alimony; and the parties were similarly situated in age and health. Other factors, however, support the argument that the debt assumption was in the nature of alimony. First, the relative earning power of the parties at the time of the divorce in 1979 was $20,000 for Boroff and $6,000 for Larson.[1] Thus, there was a significant disparity in earnings between Larson and Boroff. Second, at the time of the divorce, the amount of support provided by the settlement absent the debt assumption would not have been adequate. There was no alimony or maintenance awarded; Larson was earning only $6,000; she had released her first husband from any burden of alimony or support; and the amount of debt she would have faced absent the assumption by Boroff could have been as high as $120,000. A third factor is the evidence of negotiation between the parties on the language of the hold harmless agreement. Both Larson and Mr. Zerafa (Boroff's divorce lawyer) stated that there was extensive negotiation over the language of that provision in the Judgment of Divorce.
 
 
 23
 Appellant Boroff contends that in determining the intent of the parties, the bankruptcy court erred in only considering evidence of Larson's subjective belief as to the purpose of the assumption of debt. In its opinion, the bankruptcy court noted that Larson had testified to the effect that:
 
 
 24
 she didn't want to sign the agreement and never would have agreed to the terms of the judgment of divorce or no alimony, had she understood that she might be liable for the debt to Empire National Bank.
 
 
 25
 The bankruptcy judge stated that "I believe she is sincere and I believe she understood that this was in lieu of support for her...." Later, he stated that "[s]he had given up her, at least in her mind, ... her right to support." There is no similar discussion in the bankruptcy court's opinion of Boroff's understanding of the nature of the agreement. The bankruptcy judge's silence as to Boroff's understanding of the agreement, however, does not indicate that he failed to determine the intent of both parties. It was not unreasonable for the bankruptcy judge to conclude that Larson's understanding of the meaning of the agreement was indicative of the understanding of both parties, especially as there was extensive negotiation on the language of the hold harmless agreement. Boroff offers no evidence unavailable to the bankruptcy court that would indicate that his understanding of the meaning of the agreement was different from Larson's understanding.
 
 
 26
 Given the existence of evidence that supports the contentions of both sides as to the intent of the parties in the divorce agreement, this court holds that the bankruptcy court was not clearly erroneous in determining that the intent of Boroff's assumption of the debt was to provide support in the nature of alimony to Larson.
 
 C. Effect of the assumption of debt
 
 27
 After determining that it was the intent of the parties that the assumption of debt was in the nature of alimony, the next step in the Calhoun analysis is for the court to "inquire whether such assumption has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." 715 F.2d at 1109 (Emphasis in original). This is an ongoing determination, not limited to the time of the divorce. Calhoun states that:
 
 
 28
 [t]he distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse's capabilities for self-support.
 
 
 29
 Ibid. The bankruptcy court did not make an explicit finding as to whether the debt assumption had the effect of providing necessary support. Nevertheless, that court's consideration of the condition of the parties both at the time of the divorce and the time of the bankruptcy showed a sensitivity to the concerns expressed in the Calhoun "effect" test.
 
 
 30
 Boroff contends that Larson does not now need the $8,000 in order to support herself or her children. At the time of the divorce in 1979, the debt assumed was $120,000 (or $76,385.32 after liquidation of the Auto Wash) and Larson was earning approximately $6,000 while Boroff was earning more than $20,000. By the time of the bankruptcy trial in 1987, however, Larson's liability on the debt had been reduced to $8,000 and she was earning $25,000 to Boroff's $24,000. By 1987, Larson's two sons were at or near the age of majority. Furthermore, Boroff claims that Larson has her house listed for sale at $64,000. He argues that after subtracting the first mortgage balance of $27,500, the $8,000 still owing on the second mortgage, and a 7% real estate commission, Larson would be left with $24,000 after sale of the house.
 
 
 31
 Larson challenges Boroff's calculation of her assets. She notes that the figure of $64,000 was an assessment of the home in 1987. The relevant time, Larson argues, is 1984, when Boroff filed for bankruptcy. Moreover, in 1987 she unsuccessfully tried to sell the house for $58,000. Larson also points out that as of the bankruptcy filing in 1984, the house still secured the $76,385.32 debt. The total amount owed on both mortgages was over $100,000.
 
 
 32
 We hold that the ruling of the bankruptcy court was not clearly erroneous on the effect of the debt assumption. When considered over the course of time between the divorce in 1979 and Boroff's filing of bankruptcy in 1984, Boroff's assumption of debt did have the effect of providing necessary support to Larson. Despite ultimately reaching a level of earning similar to Boroff's, Larson did not enjoy that level of income throughout the entire period. Moreover, Larson had the children to support, at least at the time of the divorce and for several years thereafter, and she had waived support from the father of the children at the time of her marriage to Boroff.
 
 II
 
 33
 Once the bankruptcy court had ruled that the debt assumed by Boroff under the hold harmless agreement was not dischargeable in bankruptcy and that Boroff was liable to Larson for the amount of that debt, it might ordinarily have ordered Boroff to indemnify Larson for attorney fees incurred in reducing the level of that debt.[2] The court did not do so because it found that burdening Boroff with the attorney fees as well as the debt would violate the "fresh start" policy embodied in federal bankruptcy law. In re Calhoun, 715 F.2d at 1110.
 
 
 34
 Given appellant's earning potential of approximately $24,000 at the time of the bankruptcy, it is not an unreasonable conclusion that a burden of nearly $16,000 (i.e. the debt and the attorney fees) would deny him a fresh start. Such determinations are of necessity initially committed to the sound discretion of the bankruptcy judge. We note that a similar argument can be made that the $8,000 debt found non-dischargeable would also impede a fresh start. However, such monetary balancing does not lend itself to finding bright lines. We hold that the bankruptcy judge acted within his discretion in determining that a liability of approximately $16,000 would deny appellant a fresh start, while a liability of $8,000 would not. Thus, the decision to hold the attorney fees dischargeable in bankruptcy was not clearly erroneous.
 
 III
 
 35
 For the reasons discussed in section I above, the decision of the district court upholding the bankruptcy court's ruling that Boroff's agreement to hold Larson harmless from the debt on the loan from Empire National Bank was not dischargeable in bankruptcy is AFFIRMED. For the reasons discussed in section II, the decision of the district court upholding the bankruptcy court's ruling that any liability to Boroff with regard to the attorney fees incurred by Larson in reducing the amount owing on the Empire loan was dischargeable in bankruptcy is AFFIRMED.
 
 
 
 [1]
 By the time of the bankruptcy proceedings in 1987, Boroff was earning $24,000 and Larson was earning $25,000. For the purpose of determining the intent of the parties regarding the assumption of debt, however, the relevant time to examine the relative earning power of the parties is the time of the divorce agreement
 
 
 [2]
 Larson was indebted for $76,385.32. She expended $7,045.37 (in attorney fees) to reduce the nominal indebtedness to $8,000, by means of a settlement with Empire National Bank. In effect, she reduced her indebtedness from $76,385.32 to $15,045.37, a savings of $61,339.95. If Boroff was liable to Larson for the original debt, then the savings was his