### In re CRAWFORD HARDWARE, INC., Debtor.

**Bankruptcy No. 2-81-01190.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 21, 1987.

---

Daniel F. Carmack, Columbus, Ohio, trustee, pro se.

## ORDER ON ADMINISTRATIVE CLAIMS, INCLUDING COMPENSATION AND EXPENSES FOR TRUSTEE AND ATTORNEY FEES FOR COUNSEL FOR TRUSTEE

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a final report and an application for compensation and fees filed by Daniel F. Carmack, the duly-appointed trustee ("Trustee") and the attorney for the Trustee in the Chapter 7 bankruptcy estate of Crawford Hardware, Inc. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

By this opinion the Court addresses problems it hoped could have been dealt with by minor adjustments of fee requests. Because certain problems recur, however, and because trustees, attorneys, and other professionals need to be aware of certain of the Court's requirements for fee allowances, this ruling is being made in written form.

This bankruptcy case was filed on March 20, 1981. The assets in the estate, in the amount of $2,925.23, represent the proceeds of a public auction of the debtor's inventory, equipment, furniture and fix-

tures held in November of 1981 for which an order approving the report of that sale was entered on November 9, 1981. Although appraisal of that property indicated a value of $29,158.50, the auction realized gross proceeds of $50,752.50. Of that amount, the auctioneer received $4,567.73 as commissions and $2,977.92 for reimbursement of his actual expenses. Subsequent to the order approving that sale, and despite the failure of the bankruptcy schedules to show any secured obligations, $40,281.62 was disbursed in 1981 and 1982 to creditors with liens, presumably against items sold at the auction. No pleadings or other papers were filed with the Court in the case after the November 9, 1981 order until the Trustee filed his final report and account and fee request on October 29, 1987.

Pursuant to 11 U.S.C. § 326, the Trustee has requested compensation for his services as Trustee in the amount of $1,387.53 and for his services as attorney for the Trustee in the amount of $1,310.00. Other administrative claims for which allowance is being sought are $67.30 for the Trustee's expenses, $120 in fees and $30.26 in expenses for an appraiser, $1,000 for post-petition rent, and miscellaneous bankruptcy fees in the amount of $33.25. If all administrative claims are allowed as requested, such claims will exceed the available assets.

Under the provisions of 11 U.S.C. § 330 and whether or not any objection has been filed, this Court has an obligation to determine the reasonableness of fees requested for actual and necessary services rendered by a professional employed under Section 327 of the Bankruptcy Code. That determination is based upon criteria first set forth in controlling case law in this circuit under the provisions of the Bankruptcy Act of 1898 (now repealed). With the exception of the economic concern for frugality which was explicitly overruled during the enactment of the Bankruptcy Reform Act of 1978[1], the factors governing fee applications by professionals in this circuit are those adopted in *Cle–Ware Industries, Inc.*

*v. Sokolsky,* 493 F.2d 863 (6th Cir.1974), *cert. denied* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53; see *Hunter Savings Assoc. v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.),* 750 F.2d 536 (6th Cir.1984). Those factors include:

1. The amount of work done;
2. The novelty and difficulty of the questions involved;
3. The skill requisite to perform the legal service properly;
4. The results accomplished;
5. Whether the fee is fixed or contingent;
6. The amount involved in connection with the services rendered;
7. The length of time consumed;
8. The experience, reputation and ability of the attorneys;
9. The size of the estate; and
10. The opposition met. *Cle–Ware,* 493 F.2d at 868–9.

In making that determination, it is also helpful to consider the customary fee, the preclusion of other employment by the attorney because of the acceptance of the case, the undesirability of the case and awards in similar cases. See *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); see also *American Benefit Life Insurance Company v. Baddock (In the Matter of First Colonial Corp. of America),* 544 F.2d 1291 (5th Cir.1977), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388.

Of those factors, the result achieved has the greatest determinative weight. *Cle–Ware,* 493 F.2d at 868. In this Court's opinion, and especially with regard to fees requested by counsel for a Chapter 7 Trustee, it is an evaluation of the time and effort expended in comparison with the results obtained which is the thrust of the analysis. While impressive results with little effort are to be rewarded generously, great amounts of time and energy with little result require much greater scrutiny. It is also necessary that the services compensated be professional

1. 124 Cong.Rec. H 11,091–92 (daily ed. September 28, 1978) (statement of Rep. Edwards).

ones, rather than ministerial or administrative services. *Cle–Ware,* 493 F.2d at 868 and 877.

■ In order for the Court to evaluate the reasonableness of the fees requested utilizing the *Cle–Ware* guidelines, it is necessary for the applicant to set forth with specificity the services for which compensation is requested. Each entry in that summary should indicate who performed the services, the time spent, the nature of the activity performed, and the relevance of that activity to matters in the case. A simple statement that a telephone call was made, a letter written, or a conference held does not sufficiently describe the service such that the Court can analyze its reasonableness or necessity.

An analysis of the services described in this request for fees by counsel for the Trustee shows a total of 18 hours expended. Of that time, 4¼ hours were for various telephone calls and letters relating to obtaining the agreement of secured creditors to sell the debtor's inventory. Another 5 hours related to preparations for employing the auctioneer, conducting the sale and analyzing the amounts needed to pay off various lien holders. One hour in 1982 related to an analysis of another lien holder's documents. Some 1¾ hours were devoted to preparation of the fee application and final report, and 1½ hours were related to activities apparently connected with the personal bankruptcy case of the debtor's principal, the relevance of which is not clear to this Court. The remaining 4½ hours were spent on miscellaneous tasks which appeared to be required such as checking public records, resolving tax matters for the estate and pursuing other possible causes of action.

■ Frankly, the Court wonders why the Trustee decided to sell assets valued at approximately $29,000 with outstanding liens of $40,000. Even if the appraisal was thought to be low and if the Wilson lien, which only appears in time itemizations subsequent to the auction, was not taken into account, any return to unsecured creditors appeared highly unlikely. If reasons existed why pursuit of these assets seemed

appropriate, such reason should have been set forth in the fee request so that the Court could have evaluated the services in light of that support.

Without wishing to discourage the investigation of possible but uncertain claims and assets, application of the *Cle–Ware* factors to this fee application causes the Court to find that most of the time was of no benefit to the estate. Added to that perception is a belief that each telephone call and letter routinely had ascribed to it a minimum period of 15 minutes. While occasional rounding up of short increments of time for certain activities may be understandable in light of the disruption a telephone call or short conference causes, the routine rounding up of some 19 telephone calls and letters, in a case without assets for unsecured creditors, results in significantly inflated charges to the estate. While the numbers are not large in this case, the pattern is of concern. Certainly any analysis of the time spent and the results obtained must take into consideration any perception of excessive inflation of actual time which might occur from that type of timekeeping.

■ It also appears to the Court that counsel for the Trustee, or any other party seeking compensation from the bankruptcy estate, at the time of preparing the fee application, must exercise certain "billing judgment" before determining the total compensation to be requested. While the Court performs this function as part of its duties, the attorney requesting the allowance is often much more knowledgeable about the value and necessity of the services performed than is the Court in its somewhat removed position. Failure to make such judgment assessments or to indicate why there should be no reduction from the customary hourly rate multiplied by the hours spent may either go unnoticed in a particular case or may result in excessive reduction by the Court. The effect of such failure over a number of similar applications, however, is to reduce the credibility of the particular attorney's requests. In essence, any short term gain may become a long term loss for counsel routinely mak-

ing such unaudited requests. Accordingly, apart from statutory and case law mandates, failure to exercise billing judgment in a request for fees from a bankruptcy estate similar to the judgment exercised for a private client has an unavoidable effect on the Court's perception of the efficiency and skill of counsel. Such auditing may occur by reducing the requested hourly rate or the time set out, or, perhaps more helpfully, by including all the time spent at the normal rate, but discounting the total fee requested.

 In addition to examination of the application for fees for counsel for the Trustee, the Court is required to determine what is reasonable compensation to the Trustee for his services as Trustee within the limits imposed by 11 U.S.C. § 326. The criteria for the reasonableness of that compensation pursuant to § 326 is similar to the criteria for the determination of fees for attorneys pursuant to § 330 of the Bankruptcy Code.

The Trustee has not set forth a detailed description of the activities which generated his request for compensation in the amount of $1,387.53, and the rules of this Court have not previously required such itemization. Notwithstanding that failure, the Court can surmise that the Trustee has had to be involved in activities related to conducting the § 341 meeting, reviewing the schedules, arranging for the auction, opening bank accounts and the like. The Court's opinion of the reasonableness of that request, however, is affected by the fact that no significant activity either to increase the assets or finalize this case occurred for a period of six years. When considering the *Cle–Ware* factor of the length of time consumed in comparison to the results accomplished and the amount of work performed, such extreme delay in administering an estate causes the Court to reduce significantly the compensation requested by the Trustee.

Furthermore, although 11 U.S.C. § 326 permits compensation upon moneys turned over to secured creditors, when such turnovers leave minimal assets for unsecured creditors, that fact limits the percentage this Court will allow as compensation in connection with those turnovers. Such limitation is consistent with application of the result/benefit factors to the allowance of compensation.

After consideration of the Trustee's final report and various applications, and upon application of the standards for determining compensation to professionals, the Court finds that the Trustee shall be awarded $800.00 for his compensation and reimbursement of expenses in the amount of $67.30. Counsel for the Trustee shall be allowed $785.00 as fees for legal services performed. The Court appointed appraiser, Ralph F. Quelette, is allowed fees of $120.00 plus $30.26 for reimbursement of his expenses. No allowance is made for any claim for post-petition rent for Chesapeake Realty as no appropriate request for such allowance has been presented to the Court.

IT IS SO ORDERED.