In re CARDINAL INDUSTRIES, INC., Jointly Administered with Cardinal Industries of Florida, Inc., Cardinal Partner Corp., Cardinal Partnership Corp., Cardinal Industries of Georgia, Inc., Cardinal Industries Services Corp., Cardinal Industries Mortg. Co., Cardinal Parts Service Co., Cardinal Lodging Group, Inc., Cardinal Apartment Management Group, Inc., Cardinal Industries Development Corp., Cardinal Industries of Florida Services Corp., Cardinal Industries of Georgia Services Corp., Cardinal Furniture Leasing Co., Cardinal Retirement Management Group, Inc., Cardinal Acceptance Corp., Maxim Building Corp., Cardinal Advisory Group, Inc., Columbus Construction, Inc., Debtors.

Bankruptcy Nos. 2–89–02779, 2–89–02778, 2–89–07291, 2–89–07292, 2–90–01323, 2–90–02087, 2–90–02107, 2–90–02675, 2–90–02747, 2–90–02940, 2–90–03091, 2–90–03244, 2–90–03245, 2–90–03583, 2–90–03901, 2–90–03902, 2–90–03904, 2–90–03905 and 2–90–03906.

United States Bankruptcy Court, S.D. Ohio, E.D.

July 25, 1990.

See also 116 B.R. 964.

John R. Climaco, Climaco, Climaco, Seminatore, Lefkowitz & Kaplan, Cleveland, Ohio.

Jay Alix, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, General Counsel to Trustee.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Special Counsel to Trustee, for Cardinal Retirement Management, Group, Inc., Cardinal Acceptance Corp., Maxim Bldg. Corp., Cardinal Advisory Group, Inc. and Columbus Const., Inc.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

Lori Lapin Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

P. Steven Kratsch, Kilpatrick & Cody, Atlanta, Ga., Counsel for Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, for Cardinal Industries of Georgia, Inc., Cardinal Industries Mortg. Com. and Cardinal Parts Service Co.

James H. Bownas, Cardinal Industries, Inc., Columbus, Ohio, for Cardinal Industries, Inc.

Charles J. Taunt, Birmingham, Mich., for Cardinal Industries Services Corp., Cardinal Industries of Florida Services Corp., Cardinal Industries of Georgia Services Corp. and Cardinal Furniture Leasing Co.

Thomas R. Noland, Altick & Corwin, Dayton, Ohio, for Cardinal Partnership Corp. and Cardinal Partner Corp.

Gary H. Cunningham, Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., for Cardinal Lodging Group, Inc. and Cardinal Apartment Management Group, Inc.

Sara J. Daneman, Columbus, Ohio, for Cardinal Industries Development Corp.

## OPINION AND ORDER ON COMPENSATION FOR SPECIAL COUNSEL

BARBARA J. SELLERS, Bankruptcy Judge.

The Court has been requested to determine the allowance of compensation for services and the propriety and disposition of a retainer. The services were rendered by and the retainer paid to the law firm of Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. ("Climaco Firm"). The Court finds that the application of the Climaco Firm should be allowed in the amount of $322,426.15 for professional services and $20,963.72 for reimbursement of expenses. The retainer, minus amounts applied to services for certain subsidiary corporations, must be disgorged.

The Court has jurisdiction in this matter under 28 U.S.C. § 134(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which this bankruptcy judge may hear and determine.

### BACKGROUND AND FACTS

In November of 1989 the only corporate entities in the Cardinal enterprise which were debtors in Chapter 11 cases before this Court were Cardinal Industries, Inc. ("CII") and Cardinal Industries of Florida, Inc. ("CIF"). At that time the management of CII and CIF decided to request their existing bankruptcy counsel to withdraw from representation, primarily because of disagreements regarding the probability of success if the unsecured creditors' committee of either Debtor sought the appointment of a trustee. The Climaco Firm was to be substituted as counsel.

Unknown to their existing bankruptcy counsel, CII and CIF engaged the Climaco Firm as counsel to two corporate subsidiaries and as successor counsel for CII and CIF. As part of the engagement process

CII's officers and primary shareholder caused yet another wholly-owned subsidiary, Cardinal Securities Corporation ("CSC"), to extend loans to certain other Cardinal entities. CSC extended a loan in the amount of $150,000.00 to Cardinal Industries Development Corp. ("CIDC"), another wholly-owned subsidiary. A second loan, in the amount of $150,000.00, was extended jointly to Cardinal Industries Services Corporation ("CISC"), a wholly-owned subsidiary of CII; Cardinal Industries of Florida Services Corp. ("CIFSC"); and Cardinal Industries of Georgia Services Corp. ("CIGSC"). CIFSC and CIGSC are second-tier subsidiaries of CII. CIDC and CISC then engaged the Climaco Firm to represent their interests and paid them $300,-000.00 as a retainer for anticipated services. The retainer initially was to include services directly for CIDC and CISC and, after existing counsel had been discharged, services to CII and CIF. CISC has repaid its loan to CSC; CIDC has not.

On November 9, 1989 the Court heard CII and CIF's joint motion seeking to hire the Climaco Firm and existing counsel's motion to withdraw from representation. For various reasons set forth in the record of that hearing, the Court found that the Climaco Firm could not be hired to represent CII and CIF generally, but could be appointed as special counsel for the Debtors to defend the trustee motions. There were numerous objections to the method by which the Climaco Firm had been employed and to the retainer arrangement. Those objections came primarily from other professionals in the CII and CIF cases who were being paid only under the Court's existing order and to whom extensive fees were owed. Those fees were unpaid because of CII and CIF's shortage of cash. Those professionals had been assured by CII's management that none of the subsidiary corporations had funds which could be used for the current payment of fees. The Court specifically reserved ruling on the issue of the retainer because of the urgency of other matters in both cases, caused to some extent by CII and CIF's precipitous actions with regard to its counsel. The Climaco Firm was ordered to hold the retainer in its trust account pending later ruling by the Court.

The Climaco Firm defended CII and CIF's management in the trustee motions in a fierce battle for control which was tried to the Court in the first part of December, 1989. That defense required considerable effort by the Climaco Firm over a short period of time to understand the complex Cardinal enterprise structure and its many financial problems. Despite such efforts, however, on January 4, 1990 the Court ordered the appointment of an operating trustee.

In February, 1990 the Climaco Firm applied to the Court for a final award of attorney fees. That application sought $356,426.25 for professional services and reimbursement for expenses in the amount of $20,963.72. In addition to those amounts, $40,607.12 was billed to the subsidiary corporations for work performed on their behalf. Numerous objections were filed to that application and, after hearing, the Court reserved determination primarily because the CII and CIF estates still were attempting to recover from the disruption caused by the trustee appointment process and the uncertainties regarding legal representation. Other counsel also were not receiving current payments of fees at that time.

Between March 27, 1990 and May 15, 1990, CIDC, CISC, CIFSC and CIGSC each filed a Chapter 11 petition with this Court. Those entities now seek to recover the retainer previously paid to the Climaco Firm to the extent the services for which compensation is requested were rendered to CII and CIF. The Court believes it is appropriate to decide all pending matters relating to the Climaco Firm's services at this time.

### FINDINGS AND CONCLUSIONS

A. *The Retainer Paid by the Subsidiaries.*

The Climaco Firm defends its receipt of the retainer on several grounds. It argues that the services provided exceed the amount of the retainer and that the request to disgorge the retainer will be meaning-

less or moot if a pending motion seeking substantive consolidation of all the Cardinal corporate entities is granted. The Climaco Firm also asserts that CIDC will be unjustly enriched if the retainer is repaid to it, that CISC was solvent at the time of the transaction and that the earmarking doctrine protects the retainage.

The Court could perform an extensive analysis of each argument the Climaco Firm raises. That analysis would establish that; other than possible elimination of fraudulent transfer arguments, the result in the substantive consolidation motion and CISC's solvency are irrelevant to the real issues raised by the retainer payment; that unjust enrichment to CIDC will not occur if all parties are restored to their original positions; and that the earmarking doctrine is not applicable to the facts of this matter. The Court is also aware of case law which protects from disgorgement by the Bankruptcy Court retainers received from third parties and paid from non-estate assets. *Palmer & Palmer v. United States Trustee (In the Matter of Hargis)*, 887 F.2d 77 (5th Cir.1989); *rehrg. granted*, 895 F.2d 1025 (1990). That case law can be distinguished, however, and a lengthy analysis of the Climaco Firm's defenses would be only an academic exercise.

The critical and determinative fact is that all funds of the Cardinal subsidiaries, even where those subsidiaries had not yet filed for Chapter 11 relief, were under the control of these Debtors and their management. As the vertically integrated enterprise operated, monies not required for the subsidiaries' operations were routinely upstreamed for the parent company's use. Counsel and accountants appointed by the Court to represent the Debtors and the two unsecured creditors' committees were working to preserve the value of the entire enterprise. That enterprise includes not only the corporate subsidiaries, but also the many affiliated partnerships. Interim compensation for those professionals had been authorized by the Court on a current basis, subject to a 15% holdback and to periodic applications to the Court. Those professionals had not received allowed compensation for some time because of cash shortages in the enterprise. Nevertheless, those professionals continued to serve and believed the Debtors' representations that there were no funds which could be upstreamed for such payments.

Management further had specifically represented that CSG's funds were "restricted" and could not be taken out of that company's accounts. During the period these representations were being made, the subsidiary companies frequently consented to this Court's exercise of jurisdiction over them when such exercise enabled them to enter into binding agreements to protect the assets of the entire enterprise. The only explanation given for the transfer of $300,000.00 for the retainer payment was that the restriction no longer applied.

■ The management of CII directed the payment of the retainer. While the Court does not fault the Climaco Firm for seeking payment of a retainer from assets not otherwise available to the estates of CII and CIF, the use of these particular funds to elevate one set of counsel over another was inappropriate and unfair. Further, the Court believes the entire replacement of counsel effort was misguided, destabilizing and threatening to the interests of CII and CIF's estates.

This Court's jurisdiction under 11 U.S.C. § 105(a) clearly extends to actions required to protect the fundamental fairness of the entire reorganization process. Accordingly, disgorgement of the retainer paid to the Climaco Firm is required to the extent the retainer has not been applied to services and expenses billed at $40,607.12 for the pre-petition representation of the subsidiaries which borrowed the funds and advanced the retainer. The reasonableness of the charges to those companies is not before the Court. Once disgorged, the net retainer should be repaid to the service corporations consistent with their contributions to any repayment of their loans to CSC and to CSC for the loan to CIDC which has been repaid.

B. *The Allowance and Payment of Compensation for the Climaco Firm.*

The Court has reviewed the Climaco Firm's application for compensation for

services rendered to CII and CIF and for reimbursement of expenses. In that review the Court applied the standards previously adopted by the Court in this process. *In re Crawford Hardware, Inc.*, 82 B.R. 885 (Bankr.S.D.Ohio 1987). Specifically, the Court's determination is based upon criteria first set forth in controlling case law in this circuit under the provisions of the Bankruptcy Act of 1898 (now repealed). With the exception of the economic concern for frugality which was explicitly overruled during the enactment of the Bankruptcy Reform Act of 1978 [1], the factors governing fee applications by professionals in this circuit are those adopted in *Cle–Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir.), *cert. denied* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974); *see Hunter Savings Assoc. v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536 (6th Cir.1984). Those factors include:

1. The amount of work done;
2. The novelty and difficulty of the questions involved;
3. The skill requisite to perform the legal service properly;
4. The results accomplished;
5. Whether the fee is fixed or contingent;
6. The amount involved in connection with the services rendered;
7. The length of time consumed;
8. The experience, reputation and ability of the attorneys;
9. The size of the estate; and
10. The opposition met.

*Cle–Ware*, 493 F.2d at 868–69.

In making that determination, it is also helpful to consider the customary fee, the preclusion of other employment by the attorney because of the acceptance of the case, the undesirability of the case and awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *see also American Benefit Life Insurance Company v. Baddock (In the Matter of First Colonial Corp. of America)*, 544 F.2d 1291 (5th Cir.), *cert.*

*denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

After consideration of all those factors, the Court finds that the Climaco Firm should be allowed $322,426.15 as compensation for services and $20,963.72 as reimbursement of expenses. That allowance recognizes the difficulties of the representation faced by the Climaco Firm and the temporary preclusion of other work, but discounts the requested amounts for the result achieved and the questionable value to the estate from the endeavor, for certain deficiencies in the description of the services performed, and for general reasonableness perceptions. Although the Climaco Firm's application seeks allowance as a final application, it will be subject to possible later reconsideration by the Court at the conclusion of these cases should that become necessary. Meanwhile, the Climaco Firm's allowed fees and expenses may be paid on a pro rata basis with other professionals in these cases when payments are being made for the time period during which these services were rendered, as authorized by prior orders of the Court.

IT IS SO ORDERED.

---

**1.** 124 Cong.Rec. H 11,091–92 (daily ed. September 28, 1978) (statement of Rep. Edwards).