**In re Mark and Andrea NEWMAN, Linda Lou Malin, Mark Anderson, Robert and Sheila White, Napoleon and Patricia Wilson, Sandra Harris, Michael and Wendy Gramman, Roger and Haley Pertuset, Sue E. Brown.**

Nos. 97–11394, 97–17371, 99–12842, 99–15261, 99–17186, 99–12228, 99–17087, 98–16970, 01–10911.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Oct. 30, 2001.

Mark Anderson, Sharon Center, OH.

G. Timothy Dearfield, Michael Warren, Cincinnati, OH.

Margaret Burks, Trustees Office, Cincinnati, OH, for U.S. trustee.

## ORDER GRANTING IN PART AND DENYING IN PART APPLICATIONS FOR POST–CONFIRMATION ATTORNEY FEES

J. VINCENT AUG, Jr., Bankruptcy Judge.

These matters are before the Court on nine applications for attorney fees subsequent to plan confirmation filed by the same law firm in a three month period and the Chapter 13 Trustee's objections thereto. In one case, *In re Harris,* the Debtor objected to the application. A hearing was held on October 11, 2001.[1]

### I. A Fee Application Must Be Prepared Based On Contemporaneous Time Records

■ The fee applications request compensation for legal services rendered as far back as 1997. Attorney Michael Warren prepared all the fee applications. He did not join the law firm until January, 2001. Prior to January, 2001, attorney G. Timothy Dearfield was the only attorney in the law firm. Mr. Warren candidly

---

1. This law firm has in excess of 30 fee applications pending before this Court. The parties agreed to present oral argument on the fee applications in groups. The arguments presented by counsel at the hearing applied

admitted at the hearing that the law firm did not keep contemporaneous time records until April, 2001. Mr. Warren stated that he prepared the fee applications based on "documents" in the files, such as a pleading, a letter, or a note indicating that a telephone call had been made.

In sum, the fee applications were not prepared based on contemporaneous time records. Indeed, not only are the fee applications based on "reconstructed" time, the vast bulk of the fee applications represent Mr. Warren's "reconstruction" of Mr. Dearfield's time.

The particular case of *In re Brown* demonstrates the pitfalls of reconstructed time. In that case, a fee application for $225 was filed on June 20, 2001 for work done relative to a motion to retain insurance proceeds. The fee application was granted. Two months later, on August 22, 2001, a second fee application was filed for the same work. The second application showed slightly different dates for the work done and requested $105.

■ Compensation awards are governed by 11 U.S.C. § 330, which provides in part for the "reasonable compensation for actual, necessary services" rendered by the attorney. The Sixth Circuit has adopted the lodestar method of fee calculation for bankruptcy cases, which involves multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *In re Boddy,* 950 F.2d 334, 337 (6th Cir.1991). The debtor's attorney has the burden to demonstrate entitlement to the requested fees and documentation of hours worked and hourly rates. *See e.g., In re Woodward East Project, Inc.,* 195 B.R. 372, 375 (Bankr.E.D.Mich.1996).

not only to the nine cases cited in the caption above but also to the many other pending fee applications. The Court does not believe that additional oral argument would be helpful.

■ In order for the Court to determine the actual time spent on the legal services, *see* 11 U.S.C. § 330, as well as the hours reasonably expended, *see In re Boddy,* 950 F.2d at 337, it is implicit that the attorney keep contemporaneous time records. Contemporaneous time records are critical, not only because they are a benchmark of accurate time records, but because it is virtually impossible to reconstruct time records accurately after the legal work has been done. *See also United States Trustee Guidelines,* issued January 30, 1996 (time entries should be made contemporaneously); *In re Quinn,* Case No. 96–12692, entered Oct. 30, 1997 (Aug, J. and Hopkins, J.).

Accordingly, the fee applications are hereby DENIED to the extent that compensation is requested for work done prior to April 1, 2001.

## II. A Fee Application Must Be Filed Promptly

■ The fee applications cover legal work done over a long period of time, in one case as far back as 1997 and in many cases as far back as 1998 and 1999. The fee applications were not filed until 2001. No real explanation for this delay was offered. The filing of the fee applications, however, roughly coincides with Mr. Warren's association with Mr. Dearfield.

The Court is not anxious to set deadlines where none are necessary. Rather, common sense and reasonableness should determine what makes a timely fee application. However, both parties, including the Chapter 13 Trustee, have asked this Court to set a specific deadline for the filing of a timely fee application.

■ Accordingly, for the reasons set forth below, we hereby hold that a fee application should be submitted as soon as is reasonably possible, or approximately 30 to 45 days, following the completion of the legal services rendered on a given issue.

This timeliness is short enough to afford the Court the opportunity to review a fee application close in time to the underlying substantive legal work. It is long enough to prevent the filing of a "premature" fee application. It allows the Court, as well as the debtor's attorney and the debtor, to gauge the reasonableness of the amount of the fee in relation to the outcome of the legal services rendered. It also reduces the "lumping" of work done on several discrete matters into a single fee application.[2] Importantly, the prompt filing of a fee application will also reduce the possibility of surprise and prejudice to the debtor who believes his plan is near completion. An untimely and sizeable fee application can add many unexpected months of additional payments to a plan.

■ Until such time as the local bar becomes familiar with this new "deadline," it generally shall not, without more, be the basis for the denial of a fee application. Nevertheless, commensurate with the need for the filing of prompt fee applications, extremely stale time, which this Court deems to be more than six months old, will generally be noncompensable.

With regard to the subject fee applications, we have already denied compensation for work done prior to April 1, 2001 on the basis that the fee applications were not based on contemporaneous time records. To the extent that the fee applications request compensation for services completed prior to six months before the fee appli-

---

2. For example, in *In re Malin,* compensation is sought for fees totaling $2,265 for work done on many issues. Because the fees are not apportioned to the various issues, it is virtually impossible to determine whether any of the fees are reasonable.

cation filing date, the fee applications are also DENIED on that ground.

### III. A Fee Application Must Request Compensation For Legal Services

■ Compensation under 11 U.S.C. § 330 for attorneys contemplates compensation for *legal* services. Generally, attorneys are not compensated at their hourly rate for purely clerical work. *See In re Woodward East Project, Inc.*, 195 B.R. at 377. The rationale is that clerical work is built into the attorney's overhead. *See id.*

■ Many of the fee applications contain one or more entries for services such as reviewing a standard court order setting a hearing and/or for reviewing an entered order either previously prepared or signed by Mr. Dearfield or Mr. Warren. These are not legal services billable at an attorney's hourly rate. At best, it is clerical work.

Rather than rule on the fee applications as presently written, the Court hereby RESERVES its ruling on the fee applications to give Messrs. Dearfield/Warren an opportunity to delete these and similar clerical entries from the fee applications.

■ The Chapter 13 Trustee has objected to certain time entries which we find to be compensable legal services. Specifically, we find that a time entry for "review Trustee's withdrawal of a motion to dismiss" is a compensable legal service. Also, a time entry at a paralegal rate for "review Trustee's delinquency notice; prepare letter to client re same" is a compensable paralegal service. *See e.g., In re Pertuset.*

Accordingly, to the extent that the Chapter 13 Trustee has objected to these

time entries, the objections are hereby OVERRULED.

### IV. A Fee Application Must Request Reasonable Compensation For Actual, Necessary Services

■ It is expressly mandated by 11 U.S.C. § 330 that compensation must be *reasonable* and that the legal services rendered must have been *actual* and *necessary.*

Many of the fee applications request unusually sizeable fees.[3] For example, in *In re Newman*, a fee of $270 is requested relative to an application to incur debt; In *In re Anderson*, a fee of $405 is requested for work done relative to defending a motion to dismiss; and in *In re Bagby* (Case No. 00–12581), a fee of $390 is requested for work done relative to defending a motion for relief from stay which was resolved without a hearing. Thus, there is an overall question as to the reasonableness of many of the fees. Similarly, the size of the fees also calls into question whether the fees represent actual legal services rendered.

In certain instances, compensation is sought for work which may not have been necessary. For example, in *In re Maxwell* (Case No. 00–11189), compensation is sought for a fee of $525 relative to the unsuccessful defense of a motion for relief from stay. In *In re Westin* (Case No. 99–16404), compensation is sought for a fee of $495 relative to work done regarding a possible refinance, but no motion to incur debt was ever filed.

Also, the Chapter 13 Trustee contends that Messrs. Dearfield/Warren should charge 0.1 hours for attendance at a delinquency hearing as opposed to 0.2 hours,

---

**3.** Five of the nine fee applications set forth in the caption of this Order request compensa-

tion for total fees in excess of $1,000.

which is the amount typically charged by Messrs. Dearfield/Warren for this service. The Chapter 13 Trustee contends that 12 minutes is not spent on any given bankruptcy case at a deficiency hearing. Thus, the Chapter 13 Trustee is challenging whether the billed time was for actual services. On the limited record before the Court, it is difficult to determine whether Messrs. Dearfield/Warren actually spend 6 minutes or 12 minutes at a deficiency hearing. The Court acknowledges that there is likely to be some preparation and/or follow-up work related to attendance at a deficiency hearing.

Rather than rule on the fee applications as presently written, the Court hereby RESERVES its ruling on the fee applications to give Messrs. Dearfield/Warren an opportunity to modify the fee applications to insure that only reasonable compensation is sought for actual and necessary services.

## V. An Initial Fee Application Should Cover Services Generally Common To Most Cases

Local Bankruptcy Rule 2016–1 governs compensation of debtors' attorneys in chapter 13 cases. Subsection (a) addresses the initial fee application filed with the petition and expressly references *fees through confirmation.* Subsection (b) expressly references additional attorney fees for services performed by the debtor's attorney *after confirmation.*

The amount usually allowed under subsection (a) without itemization and a hearing is $1,200. Previously, this amount was $850 in Columbus and Cincinnati and $900 in Dayton.[4] Beginning in January, 2002, the amount will increase to $1,500.

The local rule is intended to be helpful and practical by "drawing a line" at the time of confirmation. Indeed, Messrs. Dearfield/Warren contend that all work, after confirmation, is compensable by way of a separate application under subsection (b).

In the hopes of offering guidance to the chapter 13 bar, the Chapter 13 Trustee has attempted to list, by topic, services that she believes should be included in an initial application and those services that may be compensated under an additional application.[5] *See* Hearing Ex. 1. The Chapter 13 Trustee's list generally divides services into pre-confirmation and post-confirmation categories, with a few exceptions.

The time of confirmation, however, is often a moving target. Confirmation may be delayed for months for a variety of reasons. A "late" confirmation should not work to the prejudice of a debtor's attor-

---

4. The difference in amount was due to varying practices in the different cities. Obviously, in Dayton, a debtor's attorney was expected to perform slightly more legal services for his initial fee than was an attorney in Columbus or Cincinnati.

5. The Chapter 13 Trustee believes that the initial fee application should include the following: 1) interviews with debtors/preparing petitions, plan schedules and amendments, including plan modifications; 2) attending all 341 meetings and confirmation hearings; 3) change of address; 4) change of employer; 5) adding creditors before confirmation; 6) reviewing the trustee's notice of intention to pay claims or trustee's objections to claims and reviewing proofs of claim; 7) preparing any motions and orders to continue proceedings; 8) preparing any motions and orders for dismissal of the case; 9) preparing single, simple status reports; 10) reviewing trustee's yearly letter to debtor regarding payments; 11) responding to telephone calls or communication regarding case or claim status; 12) any consultations or preparations in connection with any of the above matters; and 13) motion to avoid lien and/or mortgage if plan provides therefore.

ney. Nor should an "early" confirmation work to a debtor's attorney's advantage.

This Court hereby concludes that an initial fee application under subsection (a) should cover services generally common to most cases. Conversely, additional fee applications under subsection (b) should cover those services that, while perhaps common in nature, are not common to every case. This policy, when read in conjunction with Local Bankruptcy Rule 2016–1, is intended to assist all debtors' counsel and the Chapter 13 Trustee.

It would not be appropriate for this Court to render an advisory opinion as to the propriety of every item on the Chapter 13 Trustee's list. However, the Court will address two specific items raised by the Chapter 13 Trustee in her objections.

A notice of change of address and/or a notice of a change of debtor's employment requires the preparation, filing and service of a pleading. A notice of a change of a debtor's address is specifically required by Bankruptcy Rule 4002; *see also* LBR 4002–2. A notice of a change of a debtor's employment in critical to maintaining a payroll deduction for plan payments. And while a change of address or a change of employment may be relatively common events in the lives of debtors, these changes do not occur in every bankruptcy case.

For these reasons, we conclude that the filing of a notice of change of debtor's address and/or the filing of a notice of change of debtor's employment constitute additional, compensable legal services under subsection (b). Further, it appears that in the instant fee applications, the services relative to a debtor's change of

address or change of debtor's employment were performed post-confirmation.

Accordingly, to the extent that the Chapter 13 Trustee's has objected to these time entries, the objections are hereby OVERRULED.

## VI. The Attorney Who Performed The Legal Service Must Be Included In The Application.

Many of the fee applications do not indicate whether Mr. Dearfield or Mr. Warren performed the legal service. The name of the attorney should be included in the application. *See In re Crawford Hardware, Inc.,* 82 B.R. 885, 888 (Bankr. S.D.Ohio 1987); *In re C & A Enterprises, Inc.,* 132 B.R. 303, 308 (Bankr.W.D.Pa. 1991).

Identification of the particular attorney performing the legal service reduces the chance of making a duplicative request for compensation, especially where it is the apparent practice of a law firm, such as this one, to have more than one attorney work on a given bankruptcy case. Identification of the attorney also allows the Court, as well as the debtor, to make an informed decision as to the reasonableness of the compensation being sought.[6]

Accordingly, the Court hereby RESERVES its ruling on those fee applications which fail to denote which attorney performed the legal work (or which paralegal as the case may be) to give Messrs. Dearfield/Warren the opportunity to provide this information to the Court.

## VII. This Court Refrains From Issuing A Decision As To Whether Or Not Mr. Warren Has Engaged In The Unauthorized Practice Of Law.

At the hearing, both the Chapter 13 Trustee and the United States Trustee

---

**6.** In *In re Harris,* one basis of the Debtor's objection was that she had never met Mr. Warren. This objection was necessary be-

cause the application, which was prepared and signed by Mr. Warren, failed to identify that Mr. Dearfield performed the legal work.

questioned whether Mr. Warren was entitled to *any* compensation because he is not admitted to practice law in the State of Ohio.[7]

It has been held that an attorney licensed to practice law in state "A" and not in state "B" may not practice bankruptcy law in state "B." *See In re Desilets,* 247 B.R. 660 (Bankr.W.D.Mich.2000), *aff'd Rittenhouse v. Delta Home Improvement, Inc.,* 255 B.R. 294 (W.D.Mich.2000). Assuming, *arguendo,* that this is a correct statement of the law, there appear to be some nuances to the rule. Admission to the federal bar in state "B" may be a factor. *See In re Poole,* 222 F.3d 618 (9th Cir.2000); *but see In re Rittenhouse,* 255 B.R. 294. Also, affiliation with a licensed attorney in state "B" may be a factor. *See In re Lite Ray Realty Corp.,* 257 B.R. 150 (Bankr.S.D.N.Y.2001).

There is no separate admission process to the Bankruptcy Court for the Southern District of Ohio. Rather, an attorney is admitted to practice in this Court by following the admission procedures for the District Court for the Southern District of Ohio. *See* S.D.Ohio Civ.R. 83.4 (2000). Accordingly, the appropriate method of challenging Mr. Warren's right to practice before this Court should be for the United States Trustee, the Chapter 13 Trustee, the United States Attorney, or the Cincinnati Bar Association General Counsel to seek his suspension or disbarment from practice before the District Court.[8] Alternatively, it may be appropriate for any of the above representative counsel to file a formal complaint with the Unauthorized Practice of Law Committee of the Cincinnati Bar Association.

In sum, this Court concludes that it is not the appropriate entity to make the decision as to whether or not Mr. Warren engaged in the unauthorized practice of law.

However, the Court would like to take the opportunity to comment on Local Bankruptcy Rule 2090-1. The rule states in part:

(A) Admission. Membership in good standing of the bar of the highest court of a state and admission to practice in any United States district court, including any bankruptcy court, shall constitute admission to practice in the bankruptcy court for this district, except that any attorney not admitted to practice before the United States District Court for the Southern District Court of Ohio shall, at the time of the attorney's initial filing or appearance before the court, file a notice of appearance evidencing the basis for the attorney's admission.

Under the prior version of LBR 2090-1, an out-of-state attorney had to file a motion for pro hac vice status. The motions were summarily granted. Often, the motion had to be addressed on an expedited basis. Over the years, it became apparent that more out-of-state creditors wished to use their own out-of-state counsel. In response, the local bankruptcy rule was changed to the current version for the purpose of eliminating the cumbersome task of filing motions for pro hac vice status. The local rule was never intended to (nor could it) provide a short cut for admission to the federal bar or state bar.

---

7. It appears that Mr. Warren is licensed to practice law in Kentucky and Indiana and in two of the federal district courts in Kentucky and Indiana. *See* Chapter 13 Trustee's response to motion for continuance and supplemental memorandum filed October 22, 2001.

8. Local Bankruptcy Rule 2090-2 addresses this Court's power to discipline and disbar attorneys. However, the rule is applicable only to attorneys admitted to practice before this Court. *See* LBR 2090-2(d).

The local rule also contemplated that the notice of appearance evidencing the basis for the attorney's admission would necessarily be filed in every case in which an attorney made such an appearance.

The Court notes that although it may approve fee applications for legal work done by Mr. Warren that this should not be interpreted as approval of Mr. Warren's practice of law in this Court. If it is ultimately determined that the payment of any fees to Mr. Warren was improvident, such fees may always be subject to disgorgement. *See In re Desilets,* 247 B.R. 660.

## CONCLUSION

In *In re Newman, In re Malin*[9], *In re Anderson, In re Wilson, In re Gramman, In re Pertuset,* and *In re White,* Messrs. Dearfield/Warren may file an amended fee application consistent with the policies set forth in this decision for the time entries dated April 1, 2001 and later. **Any amended fee applications shall be filed within 20 days of the entry date of this Order.**

In *In re Harris,* Mrs. Harris filed an objection to the fee application. She was the only debtor to do so. At the hearing, the Court was informed that Messrs. Dearfield/Warren and Mrs. Harris had reached a "settlement" of $500 on the $1,100 fee application. However, only $120 worth of legal work was done on or after April 1, 2001. To date, no agreed entry has been tendered to the Court. In any event, we do not believe that Mrs. Harris' willingness to settle should work to her prejudice. Accordingly, this fee application is hereby GRANTED in the amount of $120.

As mentioned above, in *In re Brown,* duplicate fee applications were filed for the same work. Although the fee application for the lesser amount was subsequently withdrawn, we find it appropriate to GRANT the fee application in the lesser amount of $105.

The Court notes that Messrs. Dearfield/Warren have requested an extension of time in which to respond to the Chapter 13 Trustee's allegation involving the unauthorized practice of law. In view of this Court's ruling that this issue should be addressed in another forum, the Court finds that a ruling on this motion is not necessary.

IT IS.SO ORDERED.

---

9. That portion of the *In re Malin* July 3, 2001 fee application that is duplicative of a prior fee application that was granted previously, *see* Docs. 26, 28, is also DENIED for that reason.